UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HORIZON COMICS PRODUCTION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| MARVEL ENTERTAINMENT, LLC, MVL FILM FINANCE, LLC, MARVEL WORLDWIDE INC., MARVEL STUDIOS, LLC, THE WALT DISNEY COMPANY, INC., DMG ENTERTAINMENT LLC and DOES 1 THROUGH 10, INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) ) |

Civil Action No. 15-11684

MEMORANDUM AND ORDER

CASPER, J.                                                                February 9, 2016

I.      Introduction

Plaintiff Horizon Comics Production ("Horizon") has brought this action against

Defendants Marvel Entertainment, LLC ("Marvel Entertainment"), MVL Film Finance, LLC

("MVL Film"), Marvel Worldwide Inc. ("Marvel Worldwide"), Marvel Studios, LLC ("Marvel

Studios"), The Walt Disney Company ("Walt Disney"), DMG Entertainment LLC ("DMG

Entertainment") and Does 1 through 10, inclusive (collectively, "Defendants"), alleging

copyright infringement under 17 U.S.C. §§ 106, 501 (Count I) and unfair and deceptive business

practices under Mass. Gen. L. c. 93A, § 2 (Count II).  Specifically, Horizon alleges that the

mechanized body armor depicted by Defendants in the well-known "Iron Man" films and related

materials is the same or substantially similar to the body armor depicted in Horizon's "Radix"

comic book series.  D. 1 at 1-2.

Defendants have moved to dismiss or transfer the action pursuant to Fed. R. Civ. P.

12(b)(3) for improper venue under 28 U.S.C. §§ 1391(b) and 1406(a) or, alternatively, to transfer

the action to the United States District Court for the Southern District of New York pursuant to

28 U.S.C. § 1404(a).  D. 16.  Defendants also move to dismiss for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2).  Id.  In response, Horizon has moved for jurisdictional

discovery to the extent necessary to support its claim that this Court has personal jurisdiction

over the Defendants.  D. 32.  For the reasons stated below, the Court ALLOWS Defendants'

motion and DENIES Horizon's motion.

## II.     Standard of Review

On a motion to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the

burden to establish personal jurisdiction.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,

142 F.3d 26, 34 (1st Cir. 1998).  Where a defendant asserts that plaintiff has failed to make a

*prima facie* showing to support jurisdiction, the Court considers "whether the plaintiff has

proffered evidence that, if credited, is enough to support findings of all facts essential to personal

jurisdiction."  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)

(quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)) (internal quotation mark

omitted).  As such, the Court looks to the alleged facts and the parties' supplemental filings,

including affidavits, in assessing personal jurisdiction.  Sawtelle v. Farrell, 70 F.3d 1381, 1385

(1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court

takes "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and

construes them in the light most congenial to the plaintiff's jurisdictional claim" and then adds

"facts put forward by the defendants, to the extent that they are uncontradicted."  Mass. Sch. of

Law, 142 F.3d at 34.   The Court, however, shall not "credit conclusory allegations or draw

farfetched inferences." Ticketmaster, 26 F.3d at 203.

On a motion to dismiss for improper venue, the plaintiff bears the burden to establish that

venue is proper.   See, e.g., Sindi v. El-Moslimany, No. 13-cv-10798-IT, 2014 WL 6893537, at

*11 (D. Mass. Dec. 5, 2014); Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir.

1979).   "In ruling on a motion filed under Rule 12(b)(3), all well-pleaded allegations in the

complaint bearing on the venue question generally are taken as true, unless contradicted by the

defendant's affidavits.   A district court may examine facts outside the complaint to determine

whether its venue is proper."   Universal Trading & Inv. Co. v. Bureau for Representing

Ukrainian Interests in Int'l & Foreign Courts, 898 F. Supp. 2d 301, 317 (D. Mass. 2012) (internal

quotation marks and citation omitted), aff'd, 727 F.3d 10 (1st Cir. 2013).   Notably, the Court is

"not required to determine the best venue, merely a proper venue."   Astro–Med, Inc. v. Nihon

Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009).

### III.    Factual Background

The following relevant facts are alleged in Horizon's complaint, D. 1, or the parties'

supplementary filings, D. 19-25, 27, 28.

Horizon is a Canadian corporation with its "registered office" in Canada, D. 1 ¶ 1; D. 19

¶¶ 3-5 (Decl. of Nicole Kinsley), and is owned by comic book artists and brothers Ben and Ray

Lai (the "Lai Brothers"), D. 1 at 1.

Marvel Entertainment is a Delaware limited liability company with its principal place of

businesses in New York.   Id. ¶ 2; D. 21 ¶ 3 (Decl. of Carol Pinkus).   Marvel Entertainment is the

direct or indirect parent of MVL Film, Marvel Worldwide and Marvel Studios.   D. 21 ¶ 3.

Marvel Entertainment does not have any offices, own any assets or own or lease any property in

Massachusetts.  Id. ¶¶ 4-9.  Marvel Entertainment does not have any employees or agents in Massachusetts and does not control the day-to-day operations of the other Defendants.  Id. ¶¶ 10-11.  On information and belief, Marvel Entertainment owns the copyrights and trademarks for the Iron Man name and character and was the producer of the films "Iron Man" and "Iron Man 2."  D. 27 ¶  3.a. (Decl. of Paul Sennott).

MVL Film is a Delaware limited liability company with its principal place of business in California.  D. 1 ¶ 3; D. 24 ¶ 3 (Decl. of Ben Hung).  MLV Film does not have any offices, own any assets or own or lease any property in Massachusetts.  D. 24 ¶¶ 6-9.  Marvel Entertainment does not have any employees or agents in Massachusetts and does not control the day-to-day operations of the other Defendants.  Id. ¶¶ 10-11.  On information and belief, Marvel Film owns the copyrights in the Iron Man films and books.  D. 27 ¶ 3.b.

Marvel Worldwide is a Delaware corporation with its principal place of business in New York.  D. 1 ¶ 4; D. 23 ¶ 3 (Decl. of David Bogart).  Marvel Worldwide is the publisher of certain Iron Man books in New York.  D. 23 ¶¶ 3, 15; D. 27 ¶ 3.c.  Marvel Worldwide does not have any offices, own any assets or own or lease any property in Massachusetts.  D. 23 ¶¶ 6-9.  Marvel Worldwide does not have any employees or agents in Massachusetts and does not control the day-to-day operations of the other Defendants.  Id. ¶¶ 10-11.

Marvel Studios is a Delaware limited liability company with its principal place of business in California.  D. 1 ¶ 5.  Marvel Studios produces, among others, the Iron Man films and no work on the films was done in Massachusetts.  Id. ¶ 5; D. 22 ¶¶ 3, 12 (Decl. of Chris McComb); D. 27 ¶ 3.d.  Marvel Studios does not have any offices, own any assets or own or lease any property in Massachusetts.  D. 22 ¶¶ 6-9.  Marvel Worldwide does not have any

employees or agents in Massachusetts and does not control the day-to-day operations of the other Defendants. Id. ¶¶ 10-11.

Walt Disney is a Delaware corporation with its principal place of business in California. D. 1 ¶ 6; D. 20 ¶ 3 (Decl. of Marsha Reed). Walt Disney is a holding company and does not engage in conduct beyond that of a holding company, D. 20 ¶ 3, and did not take any actions in Massachusetts in regards to the Iron Man films, books and related merchandise, id. ¶ 14; D. 27 at 4 n.1. Walt Disney does not have any offices, own any assets, own or lease any property or purchase any advertising in Massachusetts. D. 20 ¶¶ 6-9, 12. Walt Disney does not have any employees or agents in Massachusetts and does not control the day-to-day operations of the other Defendants. Id. ¶¶ 10-11.

DMG Entertainment is a Delaware limited liability company with its principal place of business in California. D. 1 ¶ 7; D. 25 ¶ 3 (Decl. of Chris Fenton). DMG Entertainment does not have any offices, own any assets or own or lease any property in Massachusetts. D. 25 ¶¶ 6-9. DMG Entertainment does not have any employees or agents in Massachusetts and does not control the day-to-day operations of the other Defendants. Id. ¶¶ 10-11. On information and belief, DMG Entertainment was a producer of the "Iron Man 3" film. D. 27 ¶ 3.f.

On information and belief, Walt Disney Studios Motion Pictures ("Walt Disney Studios"), is a subsidiary of Walt Disney and was the theatrical distributor of certain films in the U.S. which included the Iron Man character, such as Iron Man 3, id. ¶ 3.g. On information and belief, Paramount Pictures Corporation ("Paramount Pictures"), was the U.S. theatrical distributor of the films "Iron Man" and "Iron Man 2," id. ¶ 3.h. Neither Walt Disney Studios nor Paramount Pictures is identified as a defendant in the complaint, but Horizon's counsel identifies them as Defendants Doe #1 and #2 in his affidavit. Compare D. 1 with D. 27 ¶¶ 3.g., 3.h.

In early 2001, the Lai Brothers created the comic book Radix and published three volumes in December 2001, February 2002 and April 2002, respectively.  D. 1 ¶ 14.  Radix depicts "heroic characters wear[ing] highly detailed, futuristic, armored, and weaponized suits of body armor to fight enemies."  Id.  At some time in 2002, Marvel Entertainment and Marvel Worldwide hired the Lai Brothers to work as comic book artists on various comics, not including the Iron Man series or related artwork.  Id. ¶ 17; D. 21 ¶¶ 13-14; D. 23 ¶¶ 12-14.  Prior to being hired, the Lai Brothers distributed promotional materials for Radix to "various key personnel at Marvel."  D. 1 ¶ 18.

The comic book "Iron Man" first appeared in 1963 and depicted the comic book's character, Iron Man, "wearing simple spandex like attire and minimal armor."  Id. ¶ 19.  Beginning with the first Iron Man film, the character Iron Man appeared in various films and related marketing materials wearing futuristic body armor allowing Iron Man to perform various superhuman feats.  Id. ¶¶ 20-22.  The films grossed almost $4 billion worldwide, id. ¶ 23, with the film Iron Man 3 grossing over $409 million in the United States, D. 27 ¶ 6.  The four Iron Man films were shown in Massachusetts, id. ¶ 4, and the Iron Man films and books are available to rent or purchase from websites available to Massachusetts residents, id. ¶ 7-8.  Prior to bringing this action, Horizon sent cease and desist letters to Marvel Entertainment and Walt Disney who refused to comply.  D. 1 ¶ 27.

## IV.    Procedural History

Horizon instituted this action on April 23, 2015.  D. 1.  Defendants subsequently moved to dismiss or transfer, D. 16, and Horizon, thereafter, moved for jurisdictional discovery, D. 32.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 45.

## V.      Discussion

### A.      <u>Venue and Personal Jurisdiction</u>

#### *1.      Personal Jurisdiction*

Horizon bears the burden of demonstrating that jurisdiction over its claims is statutorily authorized and consistent with due process requirements.  See Jagex Ltd. v. Impulse Software, 750 F. Supp. 2d 228, 232 (D. Mass. 2010) (citing Astro–Med, Inc., 591 F.3d at 8).  The Massachusetts long-arm statute reaches to the full extent allowed by the Constitution and, therefore, the Court proceeds to the constitutional analysis.  Id.; Blu Homes, Inc. v. Kaufmann, No. 10-cv-11418-DJC, 2011 WL 3290362, at *1 (D. Mass. July 29, 2011).  Horizon does not contend that the Court has general jurisdiction over the Defendants.  D. 26 at 10 n.10.  The Court thus evaluates whether it has specific jurisdiction over the Defendants.[1]

For the exercise of specific jurisdiction, the Court engages in a three-part analysis to determine whether specific jurisdiction exists.  The Court looks to:  (1) whether the claims arise out of or are related to the defendant's in-state activities; (2) whether the defendant has purposefully availed themselves of the laws of the forum state, and; (3) whether the exercise of jurisdiction is reasonable under the circumstances.  See, e.g., Jagex Ltd., 750 F. Supp. 2d at 232

---

[1] Horizon does not point to any conduct constituting an unfair or deceptive business practice beyond the marketing, distribution and sales of the allegedly infringing films and books in Massachusetts.  See D. 1 ¶ 12, 23-25; D. 26 at 2-6, 18-19.  Because the conduct surrounding Horizon's two claims are essentially the same, see John G. Danielson, Inc. v. Winchester-Conant Props., 186 F. Supp. 2d 1, 29 (D. Mass. 2002) (concluding that plaintiff's unsubstantiated § 93A claim was duplicative and preempted by federal copyright law); see also Ivymedia Corp. v. iLIKEBUS, Inc., No. 15-cv-11918-NMG, 2015 WL 4254387, at *6 (D. Mass. July 13, 2015) (concluding that § 93A claim "based on the same conduct as [a] copyright infringement claim" was preempted by the Copyright Act) (collecting cases), the Court will assess personal jurisdiction for both of Horizon's claims together.

(citing Astro-Med, Inc., 591 F.3d at 8).  Applying this analysis below, the Court concludes it

lacks personal jurisdiction over all the Defendants.

a)      Relatedness

Relatedness focuses upon whether the claim underlying the litigation directly arises out

of or relates to Defendants' activities in Massachusetts.  See Blu Homes, Inc., 2011 WL

3290362, at *4 (citations omitted).  Horizon's complaint does not parse out the individual

conduct of each Defendant giving rise to personal jurisdiction, however, based on the parties'

supplementary filings, each of the Defendants—with the exception of Walt Disney as a holding

company—produced or published the infringing Iron Man films and books outside of

Massachusetts or own the relevant copyrights.

While the films were shown in Massachusetts and the films and books are available for

purchase on websites accessible by Massachusetts residents, D. 27 ¶¶ 4-8, Horizon alleges that

Walt Disney Studios and Paramount Pictures were the U.S. distributors of the films, id. ¶¶ 3.g-h.

Horizon's counsel asserts that, based on his experience, producers of films like Marvel Studios

enter into agreements with distributors granting them the right to distribute a film in certain

territories, like the United States, in exchange for receiving a portion of the revenue generated by

the distributor.  Id. ¶ 12.  Horizon's counsel also asserts that, based on his experience, book

publishers like Marvel Worldwide, either directly or by their agents, print and sell copies of their

books to consumers or to wholesalers and retailers on a consignment basis.  Id. ¶ 15.  Regardless,

Horizon does not allege any specific actions or transactions by Defendants in Massachusetts or

with Massachusetts companies.  D. 1 ¶¶ 17, 20, 22, 24, 26.  Likewise, Horizon does not allege

that any infringing behavior, such as creating the purportedly infringing content, occurred in

Massachusetts.  Id.  To the extent the alleged unfair business practices underlying Horizon's §

93A claim is different from, but related to, the infringing behavior, Horizon does not allege any such practice in Massachusetts. Id. Considering that Horizon does not present facts specifically connecting any of the Defendant producers and copyright owners directly with distributors and does not present facts alleging whether Defendant publishers sold books directly to Massachusetts consumers rather than through wholesalers or retailers, it is not clear that Horizon has raised a colorable argument that its claims are related to any of the Defendants' activities in Massachusetts.

Unlike the plaintiff in Jonzun, Horizon has not presented sufficient facts suggesting that Defendant producers, publishers and copyright owners took steps to ensure the allegedly infringing films and books were marketed, distributed and sold into Massachusetts. See Jonzun v. Estate of Jackson, No. 12-cv-12019-DJC, 2014 WL 1214511, at *2 (D. Mass. Mar. 24, 2014) (concluding that plaintiff raised a colorable argument that its copyright infringement claims were related to defendants' licensing of and consent that allegedly infringing musical recording was to be marketed, distributed and sold in jurisdictions, including Massachusetts); see also Jagex Ltd., 750 F. Supp. 2d at 232 (concluding that direct online sale and customers' use of allegedly infringing software product in Massachusetts satisfied the "relatedness" prong). Thus, it is not clear that Horizon has satisfied this prong as to any of the Defendants.[2]

b)      Purposeful availment

To show purposeful availment, each Defendant must have committed some act or series of acts by which they "purposefully avail[ed] [themselves] of the privilege of conducting activities within" Massachusetts, "invoking the benefits and protections of its laws." See Blu

---

[2] Even if Horizon were to satisfy the relatedness prong as to other of the Defendants, it would not do so as to Defendant Walt Disney, a holding company. Horizon concedes that Walt Disney does not appear to take any part in the marketing, distribution or sales of the allegedly infringing films or books. D. 27 at 4 n.1.

Homes, Inc., 2011 WL 3290362, at *4 (internal quotation mark and citation omitted).   The

purposeful availment test considers both voluntariness and foreseeability.  Id.  In determining

voluntariness, the Court evaluates whether a defendant deliberately engaged in significant

activities within the forum, such that a defendant's contacts are not random, fortuitous,

attenuated or "result solely from the unilateral activity of another party or a third person."

Gather, Inc. v. Gatheroo, LLC, 443 F. Supp. 2d 108, 114 (D. Mass. 2006) (quoting Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985)) (internal quotation marks omitted).   In

determining foreseeability, the Court evaluates whether a defendant's conduct and connection

with the forum state is such that the defendant "should reasonably anticipate being haled into

court there."   Id. (quoting   Burger King Corp., 471 U.S. at 474) (internal quotation marks

omitted).

Even assuming Defendant producers, publishers and copyright owners contracted with

distributors such as Walt Disney Studios and Paramount Pictures or other third-parties to market

and sell the allegedly infringing films and books throughout the United States, simply placing a

product in the "stream of commerce," without more, does not satisfy voluntariness.  See Sawtelle

v. Farrell, 70 F.3d 1381, 1393 (1st Cir. 1995) (rejecting the "stream of commerce" theory of

personal jurisdiction in affirming dismissal where out-of-state defendant law firm did not

purposefully avail itself to New Hampshire by, among other things, listing itself in Martindale-

Hubbell as a national law firm); Jonzun, 2014 WL 1214511, at *2 (concluding the purposeful

availability prong was not satisfied where defendants placed an allegedly infringing album in the

stream of commerce and licensed and marketed the album throughout the country).   Similarly,

such conduct does not make it foreseeable that Defendants would be "haled into" a

Massachusetts court as one of the fifty states the allegedly infringing films and books were

inevitably sold.  See Jonzun, 2014 WL 1214511, at *2 (collecting cases).  Based upon the facts

alleged, the most that can be said of Horizon's showing of purposeful availment is that

Defendant producers, publishers and copyright owners created allegedly infringing films and

books that ended up in Massachusetts.  D. 27 ¶¶ 4, 7-8.

As such, Horizon has failed to make a colorable showing that any of the Defendants'

contacts with Massachusetts are such that they purposefully availed themselves of the privilege

of conducting commercial activity in Massachusetts where their contacts do not "tie [each]

defendant to a particular state," but "merely link with equal strength . . . to all states."  See

Gather, Inc., 443 F. Supp. 2d at 116 (quoting JB Oxford Holdings, Inc. v. Net Trade, Inc., 76

F.Supp.2d 1363, 1367 (S.D.Fla.1999)) (internal quotation mark omitted).  Even if certain

Defendants collected royalties from third parties based upon their sales in Massachusetts,

standing alone, that is not enough to constitute purposeful availment.  See, e.g., Jonzun, 2014

WL 1214511, at *2 (collecting cases).

Horizon relies heavily upon Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) and

Digital Equip. Corp. v. Altavista Tech., Inc., 960 F. Supp. 456 (D. Mass. 1997) in arguing that

jurisdiction exists.  D. 26 at 11-12.  As recognized by the First Circuit, however, Keeton

"focused on the special context of libel in finding jurisdiction . . . the circulation of libelous

magazines was viewed as causing injury to both the subject of the falsehood and the readers of

the magazine whenever and wherever the magazines were circulated."  Glater v. Eli Lilly & Co.,

744 F.2d 213, 216 (1st Cir. 1984).  Here, Horizon is not a resident and does not assert how, if at

all, Massachusetts residents have been harmed by Defendants' purported copyright infringement.

D. 41 at 13; cf. Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 191

(D. Mass. 2012) (noting how state residents may be harmed by the confusion and deception created by an infringing trademark).

In Digital Equipment, the court concluded it had jurisdiction over the defendant where the plaintiff and defendant entered into a licensing agreement governed by Massachusetts law and defendant used plaintiff's trademark on its website which Massachusetts residents could access to engage in transactions directly with the defendant. 960 F. Supp. at 460-63. Similarly, this Court in Blu Homes, Inc. concluded that defendants had purposefully availed themselves to Massachusetts based on their entering into an agreement—negotiated in Massachusetts—with a Massachusetts company, holding consulting meetings in Massachusetts and having numerous phone calls with, and sending emails to, the Massachusetts company. 2011 WL 3290362, at *5; see also C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59 (1st Cir. 2014) (reversing district court's conclusion that it did not have personal jurisdiction in a contract case over an international border where, among other things, the defendant had purposefully availed itself of forum where its contacts here "clearly were not random, fortuitous, or attenuated"). Although Horizon has asserted that certain Defendants may have entered into distribution agreements with Walt Disney Studios and Paramount Pictures, Horizon has not suggested that they, or any other distributors, are Massachusetts companies. D. 27 ¶¶ 3.g-h, 9-17. In Gather, Inc., the court concluded that defendants purposefully availed themselves to Massachusetts by operating an "active" website requiring input from users, including Massachusetts residents, to register and would provide such users with information and advertisements relating to Massachusetts. 443 F. Supp. 2d at 116; see Jagex Ltd, 750 F. Supp. 2d at 233 (concluding purposeful availment prong was satisfied where defendants directly sold infringing computer program to Massachusetts residents requiring them to exchange payment information and

computer codes to enable the program to function).  Notably, Horizon does not allege any similar

conduct by any of the Defendants here.  Overall, any of the Defendants' purported contacts with

Massachusetts through third-party distributors and online stores apply equally to every other

state and are too generalized and attenuated to satisfy this prong.

c)      Reasonableness

The Court considers five factors in determining whether the exercise of personal

jurisdiction is reasonable:  (1) the defendant's burden of appearing; (2) Massachusetts' interest in

adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the judicial system's interest in obtaining the most effective resolution of the controversy,

and; (5) the common interests of all sovereigns in promoting substantive social policies.  See,

e.g., Jonzun, 2014 WL 1214511, at *3 (citation omitted).  As recognized by the First Circuit,

"the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful

availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.

The reverse is equally true:  an especially strong showing of reasonableness may serve to fortify

a borderline showing of relatedness and purposefulness."  Ticketmaster, 26 F.3d at 210 (citation

omitted).

Considering these factors, Horizon fails to show that exercising personal jurisdiction over

any of the Defendants would be reasonable.  See id.  As to the first factor, Defendants do not

point to any "special or unusual burden," D. 17 at 13, beyond the "ordinary inconveniences of

litigating an action in another state," see Blu Homes, Inc., 2011 WL 3290362, at *5 (citations

omitted).  As to the second, however, given that Horizon's state law claim is duplicative—and

likely preempted—and that none of the Defendants' alleged conduct has harmed residents of

Massachusetts, it cannot be said that any Massachusetts laws or policies are implicated.  See

Jonzun, 2014 WL 1214511, at *3 (recognizing that plaintiff did not allege defendants' copyright infringement caused injury in Massachusetts); cf. Jagex Ltd., 750 F. Supp. 2d at 233-34 (discussing how defendants' purportedly infringing software program harmed consumers in Massachusetts by disrupting their computer game experience).  Regarding the third factor, assuming Horizon's choice of forum as a foreign plaintiff "must be accorded a degree of deference with respect to the issue of its own convenience," see Blu Homes, Inc., 2011 WL 3290362, at *7 (internal quotation mark and citation omitted), Horizon's owners' hour and a half shorter drive from Montreal to Boston rather than to New York City, ability to stay with friends in Boston and lack of connections with New York City, D. 28, are not especially compelling interests to justify jurisdiction.  Regarding the fourth factor, the effective resolution of the case, many of the relevant documents and witnesses, as explained by Defendants, are located primarily in New York City, D. 17 at 15; see D. 21 ¶¶ 12-13, 18; D. 22 ¶ 14; D. 23 ¶ 18, and weighs against exercising jurisdiction.  As to the final factor, Horizon's federal copyright claim does not appear to implicate any of Massachusetts' social policies and it is not alleged that any Massachusetts residents were harmed.  See Jonzun, 2014 WL 1214511, at *3.  Even assuming Horizon's § 93A claim is plausible would not suggest a different result.  Horizon does not allege any specific unfair business practice taking place in Massachusetts, aside from the sale of the allegedly infringing movies and books.  Accordingly, Horizon has also failed to satisfy this factor.

### 2.    *Jurisdictional discovery*

For the Court to consider Horizon's request for jurisdictional discovery, D. 32, Horizon must first show that there is a colorable claim of jurisdiction over Defendants.  "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the

14

existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001) (internal quotation marks and citation omitted) (emphasis in the original).  As discussed, Horizon has not made a colorable claim of jurisdiction over any of the Defendants.  Even if Horizon did, its entitlement to jurisdictional discovery is "not absolute" and the Court has "broad discretion to decide whether discovery is required." Id. (internal quotation marks and citations omitted).

Defendants do not contest the facts Horizon alleges regarding their respective roles as producers, publishers and copyright owners or that the Iron Man films and books are available to residents in Massachusetts.  See D. 33 at 1-2; D. 37 at 6-7.  Defendants do contest, however, whether this Court may consider the jurisdictional facts Horizon's counsel asserts in his declaration.  D. 37 at 2-3.  Even accepting these facts—based upon Horizon's counsel's experience—as true, Horizon demonstrates, at most, that discovery might reveal distribution agreements between Defendant producers and distributors in which a distributor is granted "the right to distribute the films throughout a certain territory (e.g., the United States)."  D. 27 ¶ 12. While Horizon focuses its argument for jurisdictional discovery on these distribution agreements, D. 33 at 6-7, Horizon uses the United States, rather than a certain state or city, as a representative territory for such agreements, D. 27 ¶ 12.  In doing so, Horizon suggests that a distribution agreement would cover the entire country.  Id.  As such, even if discovery revealed such distribution agreements, with the United States as the relevant territory, this would simply reinforce the contacts certain Defendants have equally with all states, rather than specifically with Massachusetts.  The same can be said regarding Horizon's allegation that Defendant book publishers may have used agents in printing and selling the Iron Man books.  Id. ¶ 15.  As

mentioned, equal contacts with every state are insufficient to confer personal jurisdiction over any of the Defendants and there is no suggestion that discovery would reveal any additional Massachusetts contacts, such as Massachusetts based distributors or other third parties.  See D. 33 at 1-3, 6; D. 27 ¶¶ 3.g-h, 9-17.

Horizon has failed to make a threshold showing of a colorable claim of jurisdiction, but has also failed to show how the discovery it seeks would further such a claim.  Accordingly, jurisdictional discovery is not warranted here.  See, e.g., Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 192-93 (D. Mass. 2012) (denying request for jurisdictional discovery where a "fishing expedition into the facts of [a] third-party relationship" was unlikely to yield new jurisdictional facts); Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 171 (D. Mass. 2010) (denying jurisdictional discovery for failure to present a colorable claim of jurisdiction because plaintiff did not adequately make a showing of relatedness) (discussing Swiss Am. Bank, Ltd., 274 F.3d at 625 (1st Cir. 2001)).

       *3.*     *Venue*

"Except as otherwise provided by law . . . [Section 1391] shall govern the venue of all civil actions brought in district courts of the United States . . . ."  28 U.S.C. § 1391(a)(1). Applicable here, venue must be proper as to each of Horizon's claims.  See Bearse v. Main St. Investments, 170 F. Supp. 2d 107, 116 (D. Mass. 2001) (recognizing that where there are multiple claims against multiple parties the plaintiff bears the burden to establish that venue is proper as to each claim); see also Walden v. Locke, 629 F. Supp. 2d 11, 15 (D.D.C. 2009) (same).  For a copyright infringement claim, venue must be proper under 28 U.S.C. § 1400, rather than § 1391.  See Nu Image, Inc. v. Does 1-23,322, 799 F. Supp. 2d 34, 43 (D.D.C. 2011) (noting that "the Supreme Court held long ago that '[t]he venue of suits for infringement of

copyright is not determined by the general provision governing suits in the federal district courts,' but rather by the specific copyright venue provision passed by Congress") (quoting Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 176 (1923)).  Section 1400(a) states that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."  A defendant "may be found and subject to venue only in the districts where there is personal jurisdiction."  Alicea v. LT's Benjamin Records, No. 10-cv-30002-MAP, 2011 WL 4842677, at *6 (D. Mass. Oct. 6, 2011) (internal quotation marks and citations omitted).  Accordingly, venue is improper as to Horizon's copyright claim because, as discussed in Section V.A.1., *supra*, the Court lacks personal jurisdiction over all Defendants.

While the Court need not consider venue for the § 93A claim, as Horizon has essentially conceded that the claim is duplicative, preempted by the Copyright Act and not the focus of the dispute, see D. 46 (motion hearing transcript) at 19-20, the Court addresses it here for the sake of completeness.  As such, applicable to Horizon's § 93A claim, and where none of the Defendants reside in Massachusetts, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  § 1391(b)(2).  In making such a determination, the Court takes a "holistic view" and does not look "to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim."  See Astro-Med, Inc., 591 F.3d at 12 (internal quotation mark and citations omitted).

Although Horizon asserts that "a substantial part of the events" giving rise to its § 93A claim occurred in Massachusetts, Horizon does not allege or point to any conduct constituting an unfair or deceptive business practice, beyond the showing and sales of the Iron Man films and

related materials, in Massachusetts.  See D. 1 ¶¶ 12, 20, 23-25; D. 26 at 2-6, 18-19.  That is

unsurprising considering none of the Defendants are incorporated in Massachusetts, have their

principal places of business in Massachusetts, employ any residents of Massachusetts or have

direct or indirect members in Massachusetts.  See D. 17 at 3-4.  Even the employment contracts

regarding the Lai Brothers' freelance work on other Marvel comics, to the extent they are

relevant, appear to be negotiated and performed outside of Massachusetts.  See id.  Looking to

the entire sequence of events, nothing distinguishes Massachusetts from the other states where

the Iron Man films and related materials were shown or are sold as the purportedly unfair or

deceptive business practice.  See, e.g., Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743

F.2d 947, 955-56 (1st Cir. 1984) (affirming dismissal for improper venue where plaintiff's

trademark, contract and unfair competition claims "arose no more in Massachusetts than in any

one of the many districts into which [defendants] sent their products" and "[v]irtually all of the

decisions and actions on the part of [defendants] took place in the Southern District of New

York"); see also Guest Quarters Hotels Ltd. P'ship v. Kaufman, No. 90-cv-10671-RWZ, 1990

WL 98407, at *2 (D. Mass. July 6, 1990) (quoting Johnson and recognizing that a court may also

consider "the availability of witnesses, the accessibility of other relevant evidence and the

convenience of the defendant" in assessing venue).

 Whereas Defendants' motion to dismiss for personal jurisdiction and improper venue is

granted, the Court need not address the alternative remedy of transfer.

## VI. Conclusion

 For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 16,

and DENIES Horizon's motion for jurisdictional discovery, D. 32.

 **So Ordered.**

/s/ Denise J. Casper
United States District Judge